**IN THE DISTRICT COURT FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**DELANO WILSON,**

    **Plaintiff,**

v.

**UPPER CRUST FOOD SERVICE LLC,**
a Missouri corporation,

    **Defendant.**

ELECTRONICALLY FILED
9/10/2024
U.S. DISTRICT COURT
Northern District of WV

**CIVIL ACTION NO. 24-C-____**   1:24-cv-83 Kleeh
**JURY TRIAL DEMANDED**

### COMPLAINT

1. On October 26, 2020, Plaintiff began working for Defendant as a chef.

2. Plaintiff was initially employed as an hourly employee.

3. Plaintiff routinely worked long hours cooking and cleaning a kitchen by himself. This led Plaintiff to accrue many overtime hours.

4. On or about August 2021, Defendant's direct supervisor was Nick Alero.

5. Alero informed Plaintiff that Plaintiff was being put on salary thenceforth.

6. Although this new employment agreement specified that Plaintiff would be paid overtime, he was not paid overtime at any point after signing this salary agreement.

7. Plaintiff worked under this arrangement, approximately 50 hours per week.

8. Plaintiff was never paid the specified overtime amount for the hours he worked over 40.

9. Plaintiff has no writeups or disciplinary actions against him prior to September 11, 2022.

10. From September 11, 2022 until the end of Plaintiff's employment, Plaintiff's direct supervisor was Grayson Krieger.

11. From September 11, 2022 until the end of Plaintiff's employment, Matt Beradi was the regional manager apparently over Krieger in Defendant's organization.

12. On Sept. 11, 2022, Plaintiff was making watermelon sorbet in the kitchen with a large immersion blender when he slipped and dipped his finger into the blades of the immersion blender, ripping part of his left pinkie off.

13. Immediately thereafter, an ambulance rushed Plaintiff to the emergency room of Ruby Memorial Hospital where he received care for the severed finger.

14. On Sept. 15, 2022, Plaintiff followed up with the emergency room, meeting with Dr. Andrea Lese at WVU Medical at University Town Center. Dr. Lese excused Plaintiff from work until she was able to see Plaintiff again on October 4, 2022, to determine the extent of the effects of the injury.

15. After this consultation with Dr. Lese, Plaintiff went directly to Phi Kappa Psi, the fraternity he had been working as a chef, to turn over his company iPad back to his direct supervisor, Grayson Krieger, so that the substitute chef could have the iPad.

16. During this exchange, Plaintiff notified Krieger that he would be off work until at least October 4, 2022, as per Dr. Lese's orders.

17. Plaintiff provided a copy of Dr. Lese's work excuse to Krieger at that time.

18. After Plaintiff reported this, Krieger told Plaintiff he was going to be written up for failing to clean his kitchen.

19. Krieger stated that Plaintiff should not worry, he was not going to be fired.

20. Plaintiff responded that he had no opportunity to clean the kitchen since he had left abruptly due to his injury and this was his first time back in the building since that time.

21. Plaintiff also informed Krieger that he did a weekly deep clean every Sunday, which Plaintiff had been unable to do that Sunday due to the timing of the injury.

22. After that, from September 16, 2022, until September 28, 2022, Plaintiff was not contacted by anyone from Defendant.

23. Plaintiff continued to receive messages and inquiries about his wellbeing from the Phi Kappa Psi members throughout this time.

24. Plaintiff developed psychiatric conditions as a result of the trauma of this injury.

25. On Sept. 28, 2022, Upper Crust terminated the Plaintiff by phone call.

26. Grayson and Beradi effected this termination by jointly calling Plaintiff to end his employment.

27. Before the Plaintiff could say anything, Beradi blurted out, "this isn't about your finger!"

28. Grayson and Beradi then began to list various faults that they assessed against Plaintiff's job performance, none of which had been raised with Plaintiff prior to his injury.

29. As Plaintiff inquired about the provenance of these allegations, and why they were being raised now rather than at the time that these problems supposedly arose, Defendant's allegations against the Plaintiff morphed, such that their new charge against him was that the members of Phi Kappa Psi were unhappy with Plaintiff's services.

30. Plaintiff expressed bewilderment, stating that nobody from the fraternity had ever expressed any comment of that nature to him, and that in fact the fraternity's members had routinely said the opposite, expressing their appreciation for the Plaintiff's services.

31. Grayson and Beradi then informed Plaintiff that he was terminated effective immediately, and his position had already been filled.

32. Shortly thereafter, members of Phi Kappa Psi came to visit the Plaintiff at his home in the wake of his injury.

33. During this visit, the fraternity members disclosed to the Plaintiff that Defendant had told them Plaintiff was removed as a "management issue."

34. Plaintiff asked if Phi Kappa Psi members had complained about his cooking or asked for him to be replaced.

35. The fraternity members stated that they were at a loss as to why anyone from Defendant had told Plaintiff his services were inadequate or somehow deficient at Phi Kappa Psi, and that indeed they wished him to recover as soon as possible to resume his duties as their chef.

36. Thereafter, whenever Plaintiff would visit Phi Kappa Psi or interact with its members, they would always express their regret that he was no longer their chef, and state that they wished he had remained in that position.

37. Phi Kappa Psi members further stated that they did not approve of Defendant's services after Plaintiff's termination, and they were upset that Defendant had falsely claimed their dissatisfaction with the Plaintiff's services to them as a basis for Plaintiff's termination.

38. Plaintiff never received any letter or writing memorializing his termination by the Defendant.

### COUNT 1 – DISABILITY DISCRIMINATION

39. Defendant terminated Plaintiff due to his physical and psychiatric injuries resulting from the workplace accident wherein his finger was torn off in a blender.

40. Plaintiff never returned to work for Defendant after his injury.

41. Plaintiff was fired just seventeen days after he was injured on the job.

42. No employer shall, on the basis of disability, subject any qualified individual with a disability to discrimination in employment. W. Va. Code § 77-1-4 et. seq.

43. The timing of Plaintiff's termination, and the Defendant's conduct concomitant with that termination, evidences Defendant's discriminatory animus in terminating the Plaintiff.

44. Defendant's stated basis for the termination changed over time, but eventually became that the Plaintiff was the subject of complaints from Phi Kappa Psi who wanted him gone.

45. Phi Kappa Psi members roundly rejected this claim and Defendant never produced any evidence of those complaints.

46. Defendant's proffered reason for Plaintiff's termination therefore appears to be a pretext.

47. The Defendant's actions in terminating the Plaintiff for being injured in a manner that disabled him constitutes discrimination against the Plaintiff on the basis of disability.

WHEREFORE, Plaintiff demands the value of lost wages, emotional distress damages, costs and attorneys' fees, punitive damages, and such other relief as may be appropriate upon these premises.

Respectfully submitted,

**DELANO WILSON**
Plaintiff, by Counsel

/s/ Walt Auvil
**KIRK AUVIL** (WVSB # 12953)
**WALT AUVIL** (WVSB # 190) The Employment Law Center, PLLC
1208 Market Street
Parkersburg, WV 26101
**T:** (304) 485-3058
**F:** (304) 485-6344
*auvil@theemploymentlawcenter.com*